|   |   |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF NEVADA<br>* * * | |
| TRUSTEES OF THE PLUMBERS AND PIPEFITTERS UNION LOCAL 525 HEALTH AND WELFARE TRUST AND PLAN; TRUSTEES OF THE PLUMBERS AND PIPEFITTERS UNION LOCAL 525 PENSION PLAN; and TRUSTEES OF THE PLUMBERS AND PIPEFITTERS LOCAL UNION 525 APPRENTICE AND JOURNEYMAN TRAINING TRUST FOR SOUTHERN NEVADA,<br><br>Plaintiff,<br><br>v.<br><br>JUAN CARRILIO SOTELO dba SOTELO AIR and SOTELO AIR, INC., dba COOL AIR NOW,<br><br>Defendants. | Case No. 2:13-cv-00657-RFB-NJK; consolidated with 2:14-cv-01609-RFB-NJK<br><br>**ORDER** |

### I. INTRODUCTION

This case is before the Court on the Motion for Summary Judgment of Plaintiffs Trustees of the Plumbers and Pipefitters Local Union 525 Apprentice and Journeyman Training Trust for Southern Nevada, Trustees of the Plumbers and Pipefitters Union Local 525 Pension Plan, and Trustees of the Plumbers and Pipefitters Union Local 525 Health and Welfare Trust and Plan ("Local Plaintiffs" or "Trust Funds") [ECF No. 140]; the Motion for Summary Judgment of Trustees of the Plumbers and Pipefitters National Pension Fund and International Training Fund ("National Plaintiffs" or "National Funds") [ECF No. 141]; and the renewed Motion to Dismiss of Defendants Juan C. Sotelo ("Sotelo"), and Sotelo Air, Inc. [ECF No. 142].

## II. PROCEDURAL BACKGROUND

The Trust Funds' operative Amended Complaint was filed on August 2, 2013 [ECF No. 6]. The Complaint raises allegations, pursuant to the Employee Retirement Security Act of 1974 ("ERISA") 29 U.S.C. 1001-1500, of delinquent contributions payments and attorneys' fees and costs. On September 10, 2015, the Court ordered that the Trust Funds file a Renewed Motion for Summary Judgment addressing a contract defense raised by Sotelo Air in a prior Countermotion for Summary Judgment. The Court also permitted amendment of the National Plaintiffs' Complaint at that time.

The National Trust Funds' Amended Complaint was filed on September 17, 2015. [ECF No. 81]. In addition to a breach of contract claim, the National Trust Funds asserted a breach of fiduciary duty cause of action under ERISA, 29 U.S.C. §§ 1002, 1104, 1109, and 1132. Defendants filed a Motion to Dismiss that Complaint on October 5, 2015. [ECF No. 85]. Renewed Motions for Summary Judgment were filed and fully briefed. However, due to the parties' representations regarding ongoing settlement negotiations, the Court denied all the previously filed motions without prejudice and directed parties to renew them if settlement negotiations failed. [ECF No. 137]. A settlement was not reached, and the Trust Funds and National Funds refiled their previously filed renewed Motions for Summary Judgment, which are now before the Court. [ECF Nos. 140, 141].

The Court held a hearing on the motions on July 11, 2017, and incorporates by reference the findings made at that hearing.

## III. MOTION TO DISMISS

The renewed Motion to Dismiss contains arguments related to statutes of limitation, as well as arguments related to the effectuation of a binding contract between parties. The latter arguments relied on attachments outside of the Amended Complaint, including reference to an alleged termination letter which is central to the summary judgment disputes in this case. Therefore, the Court addresses those arguments in relation to the summary judgment briefing, below, and only considers the Motion to Dismiss insofar as it raises statute of limitations defenses.

**A. Legal Standard**

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "All well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Security Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

"In ERISA actions the federal courts employ a state statute of limitations." N. California Retail Clerks Unions & Food Employers Joint Pension Trust Fund v. Jumbo Markets, Inc., 906 F.2d 1371, 1372 (9th Cir. 1990). "Because the cause of action is federal, however, federal law determined the time at which the cause of action accrues." Id. Under federal law, a plaintiff's claim accrues and the statute of limitations begins to run, "when the plaintiff knows or has reason to know of the injury that is the basis of the action." Id. at 1372. In Nevada, an action for breach of a written contract is governed by a six-year statute of limitations. NRS 11.190(1)(b).

**B. Relevant Factual Allegations [ECF No. 81]**

On May 9, 2008, Sotelo d/b/a Sotelo Air executed and delivered a signature page to the National Service and Maintenance Agreement ("Service Agreement"), agreeing to be bound by all terms and conditions of the Service Agreement, a collective bargaining agreement by and between the Mechanical Contractors Association, Inc., and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("the Union"). The Service Agreement was effective August 1, 2005 through July 31, 2010. Pursuant to Article XXIII, paragraph 86 of the Service Agreement, Sotelo Air also agreed to be bound to all amendments, modifications, changes, extensions and renewals of the Service Agreement. The Mechanical Contractors Association and the Union negotiated a successor Service Agreement effective August 1, 2010, through July 31, 2015. Sotelo Air and Sotelo executed a Standard Form

of Participation Agreement ("Participation Agreement") whereby Sotelo Air agreed to make contributions to the National Pension Fund and to be bound by the terms and conditions of the Service Agreement and any successor Agreement.

Sotelo Air did not terminate the Service Agreement in compliance with the National Labor Relations Act. Sotelo Air agreed to certain obligations pursuant to the terms and provisions of the Service Agreement and Participation Agreement. Sotelo Air agreed to submit monthly written reports showing the identities of Sotelo Air employees performing work covered by the Service Agreement, and the number of hours worked by Sotelo Air employees. Further, Sotelo Air promised that it would pay fringe benefit contributions to the Trusts on a monthly basis and at specified rates for each hour worked by or paid to its employees covered by the Service Agreement. Sotelo Air failed to timely and promptly pay fringe benefit contributions for covered labor performed by its employees from May 2008 to the present date. Sotelo Air failed to report and pay its obligations under the Service Agreement and Participation Agreement.

The Trusts retained an independent auditing firm to conduct a payroll audit of Sotelo Air's payroll and business records to determine the accuracy and completeness of Sotelo Air's monthly trust fund contribution reporting for the period of June 1, 2011 through April 9, 2013. The Audit determined a total delinquency of $14,913.96.

### C. Analysis

Defendants' Motion to Dismiss argues that since membership discussions occurred in May 2008, and the National Plaintiffs' original Complaint was filed in September 2014, it was filed outside of the six year statute of limitations. However, as the National Plaintiffs argue, the date of alleged formation of the contract is not the same as the date of breach of the contract, nor the date when the National Plaintiffs knew or should have known of a breach. Here, the National Plaintiffs argue that they did not know of the breach until an audit was performed in 2013 which revealed employee hours for which contributions were not paid into the Trust Funds and National Funds.

The National Funds' Amended Complaints alleges that Sotelo Air failed to timely and promptly pay fringe benefit contributions for covered labor performed by its employees from May 2008 through the present date. Based on this allegation, Defendants argue that all the claims are

time-barred. However, drawing all reasonable inferences in favor of the Plaintiffs, the Court finds that the allegations support an inference that the Plaintiffs did not discover the breach until an audit was conducted in 2013. The Court credits the National Plaintiffs' representation, and does not find that the mere allegations of non-payment establish that Plaintiffs knew or should have known of the alleged breach prior to an audit having been conducted. Therefore, the Motion to Dismiss is denied.

### IV. MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007). A genuine issue exists, precluding summary judgment, as long as "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Under ERISA, a person is considered a fiduciary of an employee benefit plan if "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any

moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21). A fiduciary of an ERISA plan is authorized to bring a civil action to obtain equitable relief to redress violations of the Act or "to enforce any provisions of [the] subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). A trust fund fiduciary may recover statutory damages under section 1132(g)(2) of ERISA. Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 215 (9th Cir. 1989).

### B. Undisputed Facts

The Trust Funds are ERISA employee benefit trust funds that provide health and welfare, pension, and training benefits to employees. The National Funds are express trusts created pursuant to trust agreements between the Union and affiliated Local Unions, District Councils, State and Provincial Associations, and various construction industry employers and employer associations. Juan C. Sotelo d/b/a Sotelo Air, Inc. is a corporation, formerly a sole proprietorship, that later became known as Cool Air Now. On May 9, 2008, Sotelo executed the signature page for a National Service and Maintenance Agreement ("Service Agreement"), a collective bargaining agreement between the Mechanical Service Contractors of America and the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("the Union") on June 4, 2008. The Trust Funds are third party beneficiaries of the Service Agreement.

The Agreement was countersigned by William P. Hite, General President of the Union, on June 4, 2008. The Agreement had a general effective date (for all contractors) from August 1, 2005 through July 31, 2010, unless it was terminated, or its terms were modified or extended. The Agreement stated: "This Agreement may, however, be terminated by either the Union or a signatory Employer by giving to the other written notice of termination by June 1 of each year (60 days notice) with such termination to be effective August 1st of the year in which such notice is given."

Sotelo sent monthly certified reports to the Trust Funds from July 31, 2008, until March 20, 2013, which were monthly contribution remittance reports filled in with all zeroes. Many of

the reports included a signed certification which stated, in part: "It is further certified that the employer acknowledges that it is, and by signing below shall be, signatory and bound to the applicable labor agreement and any modifications or renewals thereof . . . "

In 2010, 2011, and 2012, Sotelo had communications with Derick Stowell, a Union official, and his staff, to discuss the Service Agreement. Stewart Archibald & Barney CPAs conducted an audit of Sotelo Air's payroll records for the period of January 1, 2011 through April 9, 2013, and determined purported due and owing contributions based on the number of hours worked by employees of Sotelo Air during that time period. The Audit alleges $95,014.00 in contributions owed by Sotelo to the Trust Funds, as well as $14,913.96 in delinquent contributions to the National Funds.

The Trust Funds have received the full penal sums from Sotelo Air's bond companies, ($20,000), which were previously dismissed from this lawsuit. [ECF No. 46]. The National Funds demand bond relief from Western National Mutual Insurance Company ("Western"), who remains a party to this action.

**C. Disputed Facts**

The parties dispute when the Service Agreement was terminated. Sotelo's former counsel stated in a deposition that the Service Agreement was terminated effective July 31, 2010. Plaintiffs have submitted a written termination letter which was allegedly sent to the Union in April 2013, and argue that Sotelo's termination became effective on August 1, 2013. Sotelo claims that he hand-delivered a Letter of Termination to Richard Carrillo on May 28, 2008, but Mr. Carrillo denies receiving the letter. Sotelo therefore claims that the Agreement was terminated as of 2008.

The parties also dispute whether the termination evinced a lack of intent to agree to the terms of the Service Agreement in the first place.

Finally, there is a dispute as to whether Sotelo was a fiduciary as defined by ERISA, and whether his alleged failure to make employer contributions constitutes a breach of fiduciary duty.

**D. Analysis**

**1. Whether an Agreement was Formed**

"In an action to collect contributions, the Trust Funds stand in the position of third-party

beneficiaries of the [Collective Bargaining Agreement ("CBA")]. Generally, a third-party beneficiary's rights are subject to any contract defense that the promisor could assert against the promisee, if the promise were suing on the contract." Carpenters Health & Welfare Trust Fund v. Bla-Delco Const., Inc., 8 F.3d 1365, 1369 (9th Cir. 1993). However, the availability of contract defenses in trust fund collection actions is restricted because "millions of workers depend upon the employee benefit trust funds for their retirement security." Id. (quoting Sw. Admins., Inc. v. Rozay's Transfer, 791 F.2d 769, 773 (9th Cir. 1986)). Whether a contract defense is permissible in a trust fund collection action depends on whether the defense would result in the CBA being *void ab initio* or merely voidable – that is, whether the CBA was ever a valid contract to begin with. Bla-Delco, 8 F.3d at 1369. A defense that renders the contract merely "voidable," such as when the employer asserts that he terminated the contract, is generally not a legitimate defense in an ERISA collection action. Id. A fraud in the execution defense is permissible in such actions, whereas a fraud in the inducement defense is not. In Rozay's Transfer, the Ninth Circuit specified that a "meeting of the minds" defense related to retroactive payment of trust fund contributions did not provide a legitimate defense to the collection action, where it was another way of stating that the union orally misrepresented the effect of the agreement, therefore making it a fraud in the inducement issue. 791 F.2d at 775.

Plaintiffs argue that, on the undisputed facts, Sotelo is liable for delinquent contributions pursuant to ERISA. Sotelo first argues that he is not liable under the Service Agreement because he never formed a binding contractual agreement with Plaintiffs. Sotelo argues that the termination letter he allegedly sent on May 28, 2008, evidenced an intent to rescind from the agreement, before it became binding. The termination letter provided by Sotelo, dated May 28, 2008, states that it is a termination pursuant to page 14, section 84, of the Service Agreement, which in turn states "that such termination . . . [is] effective August 1st of the year in which such notice is given." Sotelo argues that since the Service Agreement was only countersigned by William P. Hite, General President of the Union, on June 4, 2008, that the termination letter "terminated [Sotelo's] intent to enter into a yet to be formed contract with the Union." Sotelo makes this argument based on both the May 2008 letter he has produced in evidence, and on the fact that the Agreement's signature

page states: "NOTE: Agreement only valid when signed by UA General President."

Plaintiff argues that a countersignature was not required to bind Sotelo Air to the Agreement, since, although no employer may agree with a union to contribute to an employee benefit plan without a "written agreement" under Section 302(c)(5)(B) of the National Labor Relations Act, "this need not be a formal collective bargaining agreement." Central States v. Gerber Truck Service, Inc., 870 F.2d 1148, 1153 (7th Cir. 1989). The Court agrees that under the plain language of the statute, no specific format or countersignature is required to bind a signatory. Section 302(c)(5)(B) prevents the Court from giving force to an oral understanding between the union and the employer that would contradict the writings of the agreement, to the extent Sotelo argues that he misunderstood or did not intend to bind himself to the agreement, in spite of his clear signature on the Agreement. Furthermore, the very same signature page to which Sotelo cites contains language indicating that Sotelo "becomes signatory to this National Service and Maintenance Agreement as of this date [of signature] and agrees to comply with all terms of this Agreement in fact and in intent." [ECF No. 145-1]. That signature was made on May 9, 2008.

The Court finds that the language regarding the Union President's signature does not abrogate the fact that a contractual agreement was formed on May 9, 2008, based on Sotelo being fully aware of the terms of the agreement, and signing on to the agreement on that date. The footnote that the agreement was valid with a signature by the General President does not contradict the language that the agreement became binding on Sotelo as soon as he signed it. His "purported termination of the CBA is not a legitimate defense to the Trust Funds' action." Carpenters Health and Welfare Trust Fund for California v. Bla-Delco Const., Inc., 8 F.3d 1365, 1369 (9th Cir. 1993).

To the extent that Sotelo argues that he was subject to any misrepresentations regarding the effect of the agreement, or that there was no "meeting of the minds" with regard to the agreement, the Court finds that these defenses are not permissible in such an action, pursuant to Rozay's Transfer. See 791 F.2d at 775. Sotelo has not specifically pled or raised arguments regarding any fraud in the execution of the agreement.

Therefore, the Court finds that a valid contract was formed between the parties, and that Sotelo had an obligation to make employee benefit contributions to the Trust Funds.

**2. When the Agreement was Validly Cancelled**

As noted, it is undisputed that the Agreement between the parties was, at some point, cancelled. However, the parties dispute the date of valid cancellation. The Service Agreement stated "This Agreement may, however, be terminated by either the Union or a signatory Employer by giving to the other written notice of termination by June 1st of each year (60 days notice), with such termination to be effective August 1st of the year in which such notice is given." Sotelo claims that he validly terminated the contract by a letter that he delivered on May 28, 2008, but Plaintiffs dispute whether that letter was ever delivered. Plaintiffs claim that the contract was terminated effective August 1, 2013.

This is a disputed issue of material fact relevant to the damages that Sotelo owes to Plaintiffs pursuant to the Agreement. Therefore, this case will proceed to trial on the issue of when the agreement was validly cancelled, to determine the period for which Sotelo is liable for payments.

**3. Whether Sotelo is a "fiduciary" under ERISA**

The National Funds argue that Sotelo is fiduciary as defined by 29 U.S.C. section 1002(21), because he had authority and control over the management of plan assets, pursuant to the terms of the Service Agreement, Participation Agreement, and Trust Agreement. Sotelo counters that there is a genuine dispute as to whether plan assets in fact existed, such that this subsection of ERISA applies.

The Court finds that the undisputed facts show that there was no special relationship between Sotelo and the National Funds that triggered fiduciary duties. Even if the National Funds meet the statutory definition of a "plan" – and it is not entirely clear that the definition is met – Sotelo's requirement to make employer contributions into the National Funds did not give Sotelo control or management over the administration of such plan. Nor can those unpaid contributions be considered "plan assets." The Ninth Circuit has "consistently held that unpaid contributions by employers to employee benefit funds are not plan assets." Bos v. Bd of Trs., 795 F.3d 1006, 1011 (9th Cir. 2015) (citation omitted). Although other circuits have recognized an exception to this general rule when the plan documents expressly provide a right to future payments, the Ninth

Circuit has not adopted the exception. Id. Because Sotelo cannot be considered a fiduciary, his liability for unpaid contributions does not establish a breach of fiduciary duty.

### V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the renewed Motion to Dismiss [ECF No. 142] is DENIED.

**IT IS FURTHER ORDERED** that the Motions for Summary Judgment [ECF No. 140 and 141] are GRANTED in part and DENIED in part. This case will proceed to trial on the issue of when the Service Agreement between parties in this case was validly cancelled, and what the appropriate damages are under ERISA.[1]

DATED: September 27, 2017

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**

---

[1] The Court does note that the bench trial in this case has already occurred consistent with the findings of this order. The Court had apprised the parties of its ruling in this order prior to the bench trial. This order follows the Court's indication that it would issue a written order for the record.