# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TRUSTEES OF THE PLUMBERS AND PIPEFITTERS UNION LOCAL 525 HEALTH AND WELFARE TRUST AND PLAN; TRUSTEES OF THE PLUMBERS AND PIPEFITTERS UNION LOCAL 525 PENSION PLAN; and TRUSTEES OF THE PLUMBERS AND PIPEFITTERS LOCAL UNION 525 APPRENTICE AND JOURNEYMAN TRAINING TRUST FOR SOUTHERN NEVADA,<br><br>Plaintiffs,<br><br>v.<br><br>JUAN CARRILIO SOTELO dba SOTELO AIR and SOTELO AIR, INC., dba COOL AIR NOW,<br><br>Defendants. | Case No. 2:13-cv-00657-RFB-NJK; consolidated with 2:14-cv-01609-RFB-NJK<br><br>**ORDER**<br><br>**Findings of Fact and Conclusions of Law After Court Trial** |
| TRUSTEES OF THE PLUMBERS AND PIPEFITTERS NATIONAL PENSION FUND AND INTERNATIONAL TRAINING FUND,<br><br>Plaintiffs,<br><br>v.<br><br>JUAN CARRILIO SOTELO dba SOTELO AIR; SOTELO AIR, INC. dba COOL AIR NOW, a Nevada Corporation; JUAN CARRILIO SOTELO, an individual; NOW SERVICES OF NEVADA, LLC dba COOL AIR NOW, a Nevada limited liability company; NOW SERVICES OF NEVADA, LLC dba PLUMBING REPAIR NOW, a Nevada limited liability company; WESTERN NATIONAL MUTUAL INSURANCE COMPANY, a surety company; JOHN DOES I-X and ROE CORPORATIONS I-X, inclusive, | |

Defendants.

## I. INTRODUCTION

This case involves a collective bargaining agreement, the National Service and Maintenance Agreement ("Service Agreement"), entered between the United Association of Journeymen and Apprentices of Plumbing and Pipe Fitters Local 525 ("Local 525") and Defendant Juan C. Sotelo ("Sotelo") doing business as Sotelo Air, Sotelo Air, Inc., and Now Services of Nevada, LLC (collectively, "Defendants"). Among other requirements, the Service Agreement required Defendants to make union contributions whenever covered work was performed by union and nonunion employees. Plaintiffs Trustees of the Plumbers and Pipefitters Union Local 525 Health and Welfare Trust and Plan, Trustees of the Plumbers and Pipefitters Union Local 525 Pension Plan, and Trustees of the Plumbers and Pipefitters Local Union 525 Apprentice and Journeyman Training Trust for Southern Nevada ("Local Plaintiffs" or "Trust Funds") and Trustees of the Plumbers and Pipefitters National Pension Fund and International Training Fund ("National Plaintiffs" or "National Funds") (collectively, "Plaintiffs") seek unpaid contributions pursuant to the terms of the Service Agreement and Plaintiffs' policy documents, as well as attorneys' fees and costs. The Court held a bench trial in this case on September 1, 2017 and September 5, 2017. The Court rules in favor of the Plaintiffs based on the following findings of fact and conclusions of law.

## II. PROCEDURAL HISTORY

The Trust Funds' operative Amended Complaint was filed on August 2, 2013. (ECF No. 6). The Complaint raises allegations of delinquent contributions and attorneys' fees and costs, in violation of 29 U.S.C. §§ 1001-1500. On September 10, 2015, the Court ordered that the Trust Funds file a Renewed Motion for Summary Judgment addressing a contract defense raised by Sotelo Air in a prior Countermotion for Summary Judgment. The Court also permitted amendment of the National Plaintiffs' Complaint at that time.

The National Trust Funds' Amended Complaint was filed on September 17, 2015. (ECF No. 81). In addition to a breach of contract claim, the National Funds asserted a breach of fiduciary duty cause of action under ERISA, 29 U.S.C. §§ 1002, 1104, 1109, and 1132. Defendants filed a Motion to Dismiss that Complaint on October 5, 2015. (ECF No. 85). Renewed Motions for Summary Judgment were filed and fully briefed. However, due to the parties' representations regarding ongoing settlement negotiations, the Court denied all the previously filed motions without prejudice and directed parties to renew them if settlement negotiations failed. (ECF No. 137). A settlement was not reached, and the Trust Funds and National Funds refiled their previously filed renewed Motions for Summary Judgment. (ECF Nos. 140, 141). In its order resolving these motions (ECF No. 216), the Court found as a matter of law: a) a valid contract(s) had formed between Sotelo (and the successor entities) with the Plaintiffs; and b) Sotelo was not a fiduciary and was not therefore subject to liability for a breach of a fiduciary duty. The case proceeded to trial on the factual issues of: a) whether there was a breach of the contracts based on Sotelo's and related entities' not paying contributions as required by the contracts, b) the date of termination of the contracts, and c) the amount, if any, of delinquent contributions and interest owed by Sotelo pursuant to the contracts. Following the bench trial that took place on September 1, 2017 and September 5, 2017, the Court took the matter under submission.

**III.     JURISDICTION AND VENUE**

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 for claims arising under ERISA. The Court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367. Venue is proper because the underlying actions and corresponding damages occurred within Clark County, Nevada.

**IV.     FINDINGS OF FACT**

Federal Rule of Civil Procedure 52(a)(1) requires the Court to "find the facts specially and state its conclusions of law separately" in a bench trial. Fed. R. Civ. P. 52(a)(1). Factual findings must be sufficient to indicate the basis for the Court's ultimate conclusion. Unt v. Aerospace Corp.,

765 F.2d 1440, 1444-45 (9th Cir. 1985) (citing Kelley v. Everglades Drainage Dist., 319 U.S. 415, 422 (1943)). The findings must be "explicit enough to give the appellate court a clear understanding of the basis of the trial court's decision, and to enable it to determine the ground on which the trial court reached its decision." United States v. Alpine Land & Reservoir Co., 697 F.2d 851, 856 (9th Cir. 1983), cert. denied, 464 U.S. 863 (1983) (citations and quotation marks omitted).

After receiving evidence at the bench trial, the Court makes the following findings of fact:

1. Sotelo Air knowingly entered into a valid contract and became a signatory to the Service Agreement with Local 525 on May 9, 2008, after receiving the Service Agreement and having the opportunity to ask questions of Local 525 representatives before signing. At that time, Sotelo Air was a sole proprietorship owned and managed by Juan Sotelo. Sotelo and Sotelo Air executed a Standard Form of Participation Agreement ("Participation Agreement") whereby Sotelo Air agreed to make contributions to the National Pension Fund and to be bound by the terms and conditions of the Service Agreement and any successor Agreement. Among other requirements, the Service Agreement required Sotelo to make union contributions whenever covered work was performed by union and nonunion employees.

2. Sotelo Air, Inc., Now Services of Nevada, LLC d/b/a Cool Air Now, and Now Services of Nevada, LLC d/b/a Plumbing Repair Now were successors in interest to Sotelo Air. Sotelo Air, Inc., incorporated in mid-2013, was the first successor legal entity. It received the usable assets of Sotelo Air without paying for them. At all times, Sotelo was the sole owner and officer of these business entities.

3. The Service Agreement by its own terms did not expire unless a written termination letter was submitted to Local 525.

4. The Service Agreement Sotelo signed was effective from August 1, 2005 to July 31, 2010, and renewed on August 1, 2010 for another five-year period. Sotelo was bound by the Service Agreement until Local 525 received a termination letter from Sotelo on April 9, 2013. The termination was not effective until August 1, 2013. Sotelo did not actually submit a termination letter before the April 2013 letter.

5. Richard Carrillo, a business representative for Local 525 at the time of the events in question, did not receive a termination letter from Sotelo in May 2008.

6. Between May 9, 2008 and April 9, 2013, Sotelo received the benefit of being a signatory to the Service Agreement in the form of union work and union employees being referred to him.

7. Because Sotelo did not submit a written termination letter to Local 525 until April 9, 2013, he owes $95,013.77 in unpaid contributions to the Local Plaintiffs and $11,308.93 in unpaid contributions to the National Plaintiffs.

## V. CONCLUSIONS OF LAW

### A. Liability of Corporate Entities

The Court will first discuss the liability of the entities that were successors in interest to Sotelo Air, the sole proprietorship. The Court finds that the facts in the record indicate that Sotelo Air, Inc. merged with and took over the usable assets of Sotelo Air. The Court applies the four-factor test for a de facto merger endorsed by the Nevada Supreme Court. <u>Village Builders 96, L.P. v. U.S. Laboratories, Inc.</u>, 112 P.3d 1082, 1087 (Nev. 2005) ("To determine whether there has been a de facto merger, courts apply a four-factor test and consider: (1) whether there is a continuation of the enterprise, (2) whether there is a continuity of shareholders, (3) whether the seller corporation ceased its ordinary business operations, and (4) whether the purchasing corporation assumed the seller's obligations."). The Court finds that all of these factors weigh in favor of successor liability. When Sotelo Air, Inc. acquired the assets of Sotelo Air, there was a continuation of the enterprise: Sotelo remained the manager of the entity; all assets remained at the same physical location; and the phone number for the corporation was forwarded to the phone registered in the name of Sotelo Air. Sotelo Air, Inc. has no shareholders, rendering continuity of shareholders the same. Sotelo Air was no longer in operation and effectively ceased to exist, and all business operations were done using the name of the successor entity. The financial obligations, including paying employees and managing bank accounts, remained the same after the entity was incorporated. Sotelo's vendors, clients, and employees all understood that despite the change in

name and corporate form, the entities succeeding Sotelo Air continued its operations, including its obligations.

For these reasons, Sotelo, individually, as well as each of the proprietorship and corporate entities named in this action are jointly and severally liable for the breach detailed below.

### B. Breach of Contract and Delinquent Contributions

"Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." May v. Anderson, 119 P.3d 1254, 1257 (Nev. 2005). Breach of contract is "a material failure of performance of a duty arising under or imposed by agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987) (citation omitted). A breach of contract claim under Nevada law requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. Richardson v. Jones, 1 Nev. 405, 408-409 (1865); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

29 U.S.C. § 1132(g)(2) provides: "In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 [29 USCS § 1145] in which a judgment in favor of the plan is awarded, the court shall award the plan—
 (A) the unpaid contributions,
 (B) interest on the unpaid contributions,
 (C) an amount equal to the greater of—
  (i) interest on the unpaid contributions, or
  (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
 (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
 (E) such other legal or equitable relief as the court deems appropriate.
 For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of the Internal Revenue Code of 1986 . . . ."

"Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

The Court finds that Sotelo, on behalf of other Defendants, violated the terms of the Service Agreement, and therefore is subject to liability for breach under ERISA. As the Court found in its prior order on Plaintiffs' Motions for Summary Judgment, there was a valid contract between Sotelo, on behalf of Sotelo Air, and Local 525. Immediately upon signing the Service Agreement on May 9, 2008, Sotelo incurred an obligation to remit contributions to Plaintiffs. He breached this obligation by failing to make contributions from May 9, 2008 to April 9, 2013. The failure to make contributions establishes statutory damages under ERISA.

The Court does not find that Sotelo terminated his obligations under the Service Agreement prior to April 9, 2013, when Local 525 received a termination letter written and signed by Sotelo. Therefore, as a matter of law, Sotelo and business entity Defendants are liable for damages from the period of May 9, 2008 to April 9, 2013. The Court discusses the damages calculation below.

### C. Breach of Fiduciary Duty under ERISA

Under ERISA, a person is considered a fiduciary of an employee benefit plan if "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21). A fiduciary of an ERISA plan is authorized to bring a civil action to obtain equitable relief to redress violations of the Act or "to enforce any provisions of [the subchapter] or the terms of the plan." 29 U.S.C. § 1132(a)(3). A trust fund fiduciary may recover statutory damages under section 1132(g)(2) of ERISA. Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 215 (9th Cir. 1989).

As the Court found in its prior order, Sotelo cannot be considered a fiduciary because he lacked control or management over the administration of fund assets. Further, an employer's unpaid contributions are not plan assets. Bos v. Bd of Trs., 795 F.3d 1006, 1011 (9th Cir. 2015) (citation omitted). Thus, Sotelo's liability for unpaid contributions does not establish a breach of fiduciary duty.

**D. Damages**

The Court finds that Sotelo is liable for unpaid contributions to Plaintiffs from May 9, 2008, to April 9, 2013.

### i. Amounts Due to Trust Funds

The amount of unpaid contributions due to the Trust Funds is $95,013.77. Pursuant to the Trust Funds' Collection Policy, "interest on the unpaid contributions shall be computed at fourteen percent (14%) per annum, simple interest, from the Due Date to the date of payment in full." Fourteen percent of the total unremitted contributions is $13,301.93. Interest is calculated annually from April 2013, when the payments became due. Based on these terms, the interest due to date is $69,835.13.[1] The amount of interest will continue to accrue until the amount due is paid in full.

Pursuant to the Trust Funds' Collection Policy, liquidated damages "are equal to the higher of $20, twenty percent (20%) of the amount of unpaid contributions, or the interest due at the trust rate." Liquidated damages therefore also continue to accrue as interest accrues. As both $20 and 20% of the amount of unpaid contributions are less than the amount of interest accrued at the trust rate of 14%, the Court will award an amount of liquidated damages equal to the amount of accrued interest. The amount of liquidated damages due is $69,835.13. Liquidated damages will also continue to accrue until the amount due is paid in full.

At the time the audit report was issued, the audit fees were $11,875.96. An additional $3,000 of audit fees were incurred between the time of the report and the date of trial. Therefore, the total amount of audit fees due to the Trust Funds is $14,875.96.

### ii. Amounts due to National Funds

The total amount of contributions due to the National Funds is $11,308.93. $10,583.55 is due to the National Pension Fund, and $725.38 is due to the International Training Fund. Pursuant to the National Pension Fund Delinquency Procedures, the National Pension Fund shall seek 12% interest on the amount due from the date of delinquency to the date of payment. Twelve percent of the unremitted contributions to the National Pension fund is $1270.03. Interest is calculated

---

[1] The Court multiples the annual amount of interest due, $13,301.93, by 5.25 to arrive at this figure. April 2013 to the present day is roughly 5.25 years.

- 8 -

annually from April 2013, when the payments became due. Based on these terms, the interest due to the National Pension Fund to date is $6,667.66.[2] The amount of interest will continue to accrue until the amount due is paid in full. Pursuant to the International Training Fund Trust Agreement, the International Training Fund also imposes an annual interest rate of 12%. The annual interest owed is $87.04. The interest owed to the International Training Fund to date is $456.96.[3]

Pursuant to the National Pension Fund Delinquency Procedures, liquidated damages of 10% of the amount due are assessed against the delinquent employer if payment is not received by the due date. Based on these terms, the amount of liquidated damages due to the National Pension Fund is $1,058.35. Pursuant to the International Training Fund Trust Agreement, liquidated damages are calculated for each monthly report or payment due in the amount of 20% of the amount due. Based on these terms, the amount of liquidated damages due to the International Training Fund is $145.08. Liquidated damages do not accrue, pursuant to trust documents for both funds.

At the time the audit report was issued, the audit fees were $1,174.55. An additional $3,000 of audit fees were incurred between the time of the report and the date of trial. Therefore, the total audit fees due to the National Funds collectively is $4,174.55.

**VI.  JUDGMENT**

**A.  Delinquent Contributions**

The Court finds in favor of the Plaintiffs. The Court will award to the Trust Funds: $95,013.77 in unpaid contributions, $69,835.13 in accrued interest to date, $69,835.13 in liquidated damages to date, and $14,875.96 in audit fees.

The Court will award to the National Funds: $10,583.55 in unpaid contributions to the National Pension Fund and $725.38 to the International Training Fund, $6667.66 in accrued interest to the National Pension Fund and $456.96 in accrued interest to the International Training

---

[2] The Court multiples the annual amount of interest due, $1270.03, by 5.25 to arrive at this figure. As above, April 2013 to the present day is roughly 5.25 years.

[3] The Court multiples the annual amount of interest due, $87.04, by 5.25 to arrive at this figure.

Fund, $1,058.35 in liquidated damages to the National Pension Fund and $145.08 in liquidated damages to the International Training Fund, and $4174.55 in audit fees to the National Funds collectively.

### B. Breach of Fiduciary Duty

The Court finds in favor of Defendants and awards no damages.

### C. Attorneys' Fees and Costs

The Court awards attorneys' fees and costs to the Trust Funds and to the National Funds. The Plaintiffs shall submit a proposed order with underlying documentation as to fees and costs within 30 days of this order.

The Clerk of Court shall enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED this 3rd day of July, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**